## SECOND DEPARTMENT, OCTOBER, 1932.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. S. W. STRAUS & Co., INCORPORATED, and Others, Appellants, Impleaded with JOHN S. REITENBAUGH, Defendant.

HAGARTY, J. (dissenting). I dissent, and vote to affirm. This action is brought by the People of the State of New York, under the so-called Martin Act (General Business Law, art. 23-A, added by the Laws of 1921, chap. 649, as amd.), to enjoin the defendants from disposing of property which they derived by fraudulent practices, and for the appointment of a receiver pending this action, and for a permanent receiver upon the entry of judgment after trial. The statute is remedial in its nature and provides for these remedies to protect the inexperienced and trusting investor, and should be liberally construed. (*Allen* v. *Stevens*, 161 N. Y. 122.) The defendants, through a course of years, were engaged in merchandising bonds secured by mortgages upon real estate, and established for themselves a high reputation for conservative and honest dealing. Perhaps it is true that, as stated by the appellants in their brief, a roster of the buildings, the bonds for the erection of which have been underwritten by the Straus organization, " reads like an American architectural blue book." Upon this reputation the defendants traded up to the commencement of this action by the Attorney-General of the State of New York. From high standards and high ideals the defendants have fallen and, in recent years, have engaged in practices which, upon the showing in the record before us, were, in the unanimous opinion of this court, fraudulent, in violation of law, and operated as a fraud upon the purchasers of many of these bonds, within the meaning of the Martin Act. The record is replete with proof, much of which is of record and cannot be changed or contradicted upon the trial. Well aware of the conditions under which the defendants were operating, defendant Harry R. Amott, the vice-president and executive sales manager of the defendant corporation, reported to the board of directors in the month of December, 1929: " The salesmen themselves are doing very well as far as personal earnings are concerned, but there is undoubtedly a feeling on the part of many of our good men that they are getting ' blood money ' and the morale is affected accordingly. I have no doubt that many of the men would be content to earn less if they had greater respect for much of the merchandise we are asking them to sell." Notwithstanding this, we find the same Harry R. Amott as the trustee named in subsequent bond issues, for instance, the " Wellston Apartments " general mortgage six and one-half per cent bond issue in December, 1930. This court should be influenced in this action by the best interests of the bondholders only. The appellants impress upon us that no representations were made that the bonds were the obligations of S. W. Straus & Co., Incorporated, or that S. W. Straus & Co., Incorporated, guaranteed the bonds or guaranteed to repurchase them. That may be accepted as true, regardless of the impressions received by the purchasers of these securities. Therefore, it follows that the value of these bonds is to be determined solely by the responsibility of the obligors and the mortgaged real estate. In so far as these defendants are concerned, their liability to the bondholders is not contractual, but is limited to such responsibility for their tortious acts as may be determined in actions by the bondholders against them for damages arising out of the fraudulent sales. In such action or actions, based upon fraudulent representations, I know of no provision for the taking over of defendants' property and holding it subject to the possible entry of judgment in favor of the plaintiffs. Pursuant to the provisions of the Martin Act, however, the order under review appoints receivers and directs them to take over such of the defendants' property as was derived by them " by means of fraudulent practices in the sale

of securities." By these means the illgotten gains are taken over by the court and held subject to the outcome of the action. The bondholders, therefore, if defrauded, are secured by the mortgaged property to the extent of its value plus the property derived by the defendants as the result of the fraudulent practices and in the hands of the receivers. The proceedings in the present action in no wise limit the bondholders in safeguarding their interests in any action or proceeding that they may be advised to take, except that they may not proceed against these defendants. As to them, their rights are protected, in so far as they may be, by this receivership and injunction. I see no difficulty in the mechanics of the receivership. The assets contemplated by the order are limited to property derived by the defendants from their fraudulent practices and cannot be construed to include property or funds which properly belong to the trustee named in the deeds of trust and bonds and mortgages. If the Martin Act has any purpose at all upon the statute books it should be applied here; if not, it should be repealed.