PATRICK HARRIGAN and Others, Legal Owners and Holders of Bonds and/or Certificates of Deposit Secured by Mortgages on the Properties Herein Mentioned, Suing on Behalf of Themselves, and in a Representative Capacity on Behalf of All Other Such Owners and/or Holders, Similarly Situated, Who Have Joined in This Action, and All Such Other Owners and Holders Who May Hereafter Join in and Assist in This Action and Are Similarly Situated, Respondents, v. LEWIS H. POUNDS and Others, Said Individuals Comprising a Committee Known as THE INDEPENDENT BONDHOLDERS' COMMITTEE, and as Individual Members Thereof, and Others, Appellants, Impleaded with MILTON W. EISENBERG, Sued Herein as a Member of THE INDEPENDENT BONDHOLDERS' COMMITTEE, and Others, Defendants.*

First Department, June 30, 1933.

---

* Revg. 147 Misc. 666.

*Nathan L. Miller* of counsel [*Harold H. Corbin* and *Edward J. Bennett* with him on the brief; *Hornblower, Miller, Miller & Boston,* attorneys], for appellants Lewis H. Pounds and others, comprising The Independent Bondholders' Committee.

*Samuel Seabury* of counsel [*George Trosk* with him on the brief; *Samuel Seabury,* attorney], for the appellants George Gordon Battle and Simon Newman.

*Joseph J. Baker* of counsel [*Baker & Obermeier,* attorneys], for the appellants Samuel J. T. Straus and others.

*Raphael P. Koenig,* for the appellants Straus Securities Company, Incorporated, and Committee Service, Incorporated.

*Clarence J. Shearn* of counsel [*Samuel L. Chess,* attorney], for the respondents.

MARTIN, J. The plaintiffs seek a rescission and dissolution of certain deposit agreements under which the appellants are acting as committees for bondholders; the return of all bonds to the depositors; an accounting as to all actions taken and moneys collected by them; the production and discovery of all bondholders' lists in their possession; an injunction restraining the appellants from acting as members of any committee and their removal from all committees; and finally for the appointment of a receiver *pendente lite.*

The complaint alleges that this action is brought on behalf of plaintiffs and all other owners or holders of bonds similarly situated and all others who have bonds and who may hereafter join in and assist in this action and are similarly situated. The plaintiffs say that this case really turns on the simple question whether a dishonest trustee is competent to appoint a successor trustee.

The defendants who are members of the Independent Bondholders' Committee contend that the plaintiffs have no authority to bring this action. They say that the fundamental question underlying this appeal is the right of the court by receivership, injunction and discovery to seize and control the property and rights of persons not before the court. They argue that the sole right of plaintiffs is to bring an action for rescission, if they have any grounds to maintain it.

If the purpose of this litigation is simply to replace one group of committeemen by another, it should not be encouraged. The first group having entered upon the performance of their duties as committeemen and having incurred considerable expense, such a course would be very harmful to the bondholders and without any justification. It is strongly intimated that this proceeding is the result of a desire to remove one group of committeemen and replace them by the appointment of other committeemen who at least are no more qualified than those whom it is sought to remove.

To adequately set forth the facts and the law applicable thereto would unduly prolong this opinion. However, the great importance of the subject requires that it be dealt with at length and not in a few generalities. A short history of the facts upon which this litigation is based is necessary.

S. W. Straus & Co., Inc., for over fifty years was in the business of underwriting and selling bonds. During that time it underwrote and sold about 400 issues amounting to approximately $500,000,000; 189 of these issues amounting to $186,000,000 were paid at or before maturity at par or at a premium. Of the remaining issues, aggregating approximately $350,000,000, a considerable portion has been reduced by serial amortization or by application to sinking fund. A number of outstanding issues are today meeting all required payments of taxes, interest and amortization.

Due, it is claimed by appellants, to the depression, S. W. Straus & Co., Inc., defaulted on a number of bond issues. Defaults, however, were not confined to property covered by mortgages securing bonds sold by this company. All real property suffered. When interest was not paid, the trouble began and there were some who did not attribute the default to the general depression but to the fraudulent representations under which the bonds were sold by S. W. Straus & Co., Inc. Numerous misrepresentations have been alleged by those who purchased some of the bonds. Under the circumstances it was deemed advisable to organize committees to handle the bond issues that had defaulted. These committees were organized from the officers or employees of S. W. Straus & Co., Inc. Criticism was immediately made that officers of an

issuing house should not represent the bondholders when there was a default on the bonds. It was deemed advisable, therefore, that a new committee should be appointed to replace the old committees.

.On February 25, 1933, the Straus officials resigned in favor of the appellants herein. The appellants were elected successor members of eighty-three committees, each committee representing owners of bonds issued by a separate and distinct obligor, covering separate and distinct property, entirely unrelated to any other. The only fact common to. all the bonds was that they had been underwritten and marketed by the firm of S. W. Straus & Co., Inc.

Each of the deposit agreements under which the committees were acting expressly provided that in the event of the resignation, refusal or inability to act of any member of the committee, the vacancy thereby caused should be filled by a majority vote of the remaining members. Each of the committee members did resign and the appellants were duly and regularly elected to fill the respective vacancies caused by such resignations. This was all in strict accord with the provisions of the several deposit agreements. The procedure and action taken by the committees is shown in an abstract from a typical set of minutes attached to. the appellant Pounds' affidavit, in which the regularity of the election and succession of the appellants is established.

On the same day, February 25, 1933, another deposit agreement was executed in which the appellants were designated the Independent Bondholders' Committee, the purpose of which was to enable the appellants to act for the protection of holders of bonds of other and different issues which might, after that date, be called for deposit by them. Since the above date, therefore, the appellants have been and are now acting as members of eighty-four separate committees, consisting of the eighty-three first above mentioned, and the Independent Bondholders' Committee. The method used in selecting the present committee is set forth in the answering papers.

In the latter part of the year 1932, S. W. Straus & Co., Inc., and the various committees composed of executives of that firm, were the objects of much litigation and of attacks from many quarters. Whatever may have been the merits of such attacks, which the appellants say is of no consequence here, Mr. S. J. T. Straus, a member of the committees, asked the advice of one Edwin L. Weisl, a friend and attorney who had never represented S. W. Straus & Co. or any of its companies, and was advised that, in view of these attacks, it would be to the best interests of both the bondholders and S. W. Straus & Co., Inc., for its executives to

resign from the committees and be replaced by independent men. It is asserted that Mr. Weisl was asked to assume the task of finding men whose ability, character and standing would qualify them for the positions, and he undertook to do so on the agreement that these men were to be independent in their action in all respects. To that end, Hon. Lewis H. Pounds was interviewed and asked to act as chairman of such committees. Mr. Pounds accepted and also undertook to select other men to serve with him. He suggested the names of Messrs. Frank J. Murphy, George Gordon Battle, John D. Reilly and George U. Tompers, all of whom became members of the committee. At the suggestion of Mr. Jonas, a Mr. Newman, vice-president of Brown, Wheelock Co., consented to serve. Mr. George W. Retz and Mr. A. L. Werner were suggested by Mr. Max D. Steuer as competent men who would be absolutely independent. None of these appellants had ever had any business dealings or acquaintance with any of the Straus officials except Mr. Newman, who had met one of the officials socially, but never had any business relations with him. The appellants herein started out as the Independent Bondholders' Committee, as their name indicated under the new deposit agreement. That they have so remained is sworn to by each one of them.

It is unnecessary to set forth in detail the history and standing of each member of the committee. It is sufficient to say that each member is of excellent reputation and well known throughout the city of New York. They have been selected from different walks of life, thus giving them an opportunity to use knowledge gained in various business enterprises, and combine and use that knowledge for the benefit of these bondholders.

Mr. Lewis H. Pounds, chairman, has at all times enjoyed an enviable reputation. He has been engaged in the real estate business for over thirty years and was recently a candidate for mayor of the city of New York. He is president of the Civic Council of Brooklyn and the Long Island Chamber of Commerce, formerly Treasurer of the State of New York, borough president of Brooklyn, port commissioner of New York, and president of the Brooklyn Real Estate Board.

Mr. George Gordon Battle is a well-known and highly respected attorney.

Mr. Frank J. Murphy is a member of J. S. Bache & Co. and has been for over thirty years connected with that firm.

Mr. Simon Newman is vice-president of Brown, Wheelock, Harris & Co., one of the largest real estate management concerns in New York city.

Mr. George W. Retz is secretary and director of A. D. Juilliard

& Co., a textile and commission house. He has been connected with this concern for the past thirty-four years and has assisted in the reorganization of many mercantile concerns.

Mr. John D. Reilly is president and director of Todd Shipyards, Inc., one of the largest drydock and ship repairing concerns in this country. He is a director of the Yonkers National Bank and Trust Company, formerly a member of the board of education of that city, and is a man of large experience.

Mr. George U. Tompers is a former president of the National Liberty Group of Fire Insurance Companies, with extensive experience in real estate and financial matters.

Mr. A. L. Werner is senior partner of A. L. Werner & Co., wholesale merchants, and has been engaged in various business and real estate activities in this city for over forty years.

Unless well-earned reputations count for nothing, the mere recitation of the names and the positions in the community of these committeemen should be sufficient. It would be a difficult matter to obtain a more experienced and highly respected group of men than those selected. If men of that type are not to be trusted, conditions have become bad indeed.

In order to supplant these men with three lawyers, we must brand them as unfit to act as members of the committee. The opinion of the Special Term seems to have entirely overlooked the character, integrity and experience of the members of this committee. The opinion says: " Whatever, therefore, the gentlemen of this committee may be individually, as a committee they are not independent in any proper sense, but committed in fact, *perhaps* without being fully aware of it, to an inequitable and manipulated scheme."

These men have been removed from the committee by the Special Term on the ground that they are unfit to serve as members of said committee but for no apparent reason. It is not very likely that these men " without being fully aware of it," have been subjected to a scheme which has for its purpose the deliberate defrauding of any bondholders. This whole matter appears to be an attempt to replace one committee by another and an attempt to obtain control of this important liquidation.

The difficulty with many of the sweeping statements that are made in the moving papers and in the opinion at Special Term is that they do not appear to be founded on anything that we have been able to discover in this record. The whole argument in any event is based upon the fact that S. W. Straus & Co. were guilty of frauds and, therefore, the very able and highly esteemed men who are now charged with looking after the interests of the bond-

holders should be removed as unsatisfactory, although they had nothing whatever to do with the firm of S. W. Straus & Co., Inc.

If the allegations be true that officials of S. W. Straus & Co. resorted to the frauds that are alleged in the papers, it is remarkable that the vigilant district attorneys selected to protect the people, both State and Federal, have so far done nothing whatever to prosecute the wrongdoers.

The appellants also contend that the right assumed by the plaintiffs in this action to a rescission and to represent all depositors of bonds, is untenable and a subterfuge. They assert that the constitutional guaranties of due process prevent the taking, by way of receivership and injunction, of property of persons not before the court. They also point out that many of the issues of bonds are meeting all the required payments of taxes, interest and amortization and to force bondholders of those issues to the course here attempted would be not only unjustifiable but unfair.

As already pointed out, the committees constituting the executive officers of S. W. Straus & Co., Inc. having resigned, seventy-eight committees acting under seventy-eight distinct agreements for the deposit of bonds of seventy-eight different issues, secured by seventy-eight separate properties owned by seventy-eight different companies, have been replaced by receivers.

The appellants say that the court had no more right to take these numerous bonds of thousands of depositors not before the court than it would have to step out of court and take the coats off their backs, and that the plaintiffs had no more right to elect, on behalf of those thousands of depositors, to rescind their contracts and to sue to dissolve them, than they would have to tell them what they must eat or where they must sleep.

In *People* v. *O'Brien* (111 N. Y. 1) the court said (p. 63): "No legislation can authorize the appointment of a receiver of the property of A in an action against C, without violating the provisions of the Constitution in relation to the taking of property without due process of law."

If this action were limited to the return to the plaintiffs of their bonds, there would remain for trial a simple issue of fraud and the right to rescind as between these parties who are before the court. That is all there is to this case. That apparently is not what the plaintiffs are seeking. The appellants say that plaintiffs have obtained an order from the Special Term which contravenes Federal and State Constitutions by taking millions of dollars worth of bonds, representing vast properties of thousands of others, who are not before the court, who are not complaining, who have no notice of what is going on in this action and who have had a

receivership of their property foisted upon them without their knowledge or consent. All this appears to have been done upon the ground that the plaintiffs are representatives of a class and have a strict legal right to sue for the rescission of individual contracts made by thousands of other persons, with reference to scores of other properties in which the plaintiffs have no concern.

In *Nottebaum* v. *Leckie* (31 F. [2d] 556) the court said: " The appointment of the receivers without notice or an opportunity to be heard, and the resulting divestiture of defendant's property and business, was a taking of their [its] property without due process of law, and therefore illegal and void from the beginning."

In sixty-one issues out of seventy-eight issues the plaintiffs appear to have deposited no bonds and have no interest, no right of representation, and there is nothing whatever which entitles them to represent such depositors who are parties to a contract. As already pointed out, although the agreement under which the bonds of all of the seventy-eight issues are deposited may be similar, the bonds deposited with each committee are not. Different issues are affected, and in each particular case involve a different and distinct property. There is, necessarily, a different trust indenture for each issue of bonds; the obligors are different; the trustees may be different banks and trust companies; there may or may not be guarantors of the various issues, and the problems of each issue are unique and must be treated separately. The fact that all these issues were underwritten by one corporation originally does not affect the result.

It is contended that all this is done under the plenary power of the court and that by reason thereof the action taken herein may be justified. Resort must be made to that argument for the reason that there is no authority for such action. The court may have plenary powers, but such powers are not without limitation, and the court must act within the law.

The members of the Independent Committee have been appointed committeemen for bondholders under seventy-eight separate and distinct deposit agreements. Each agreement is under seal. Each is between the committee and particular holders of bonds of a particular issue, secured by a particular piece of real estate, under the terms of a particular trust mortgage. Although the committeemen under each agreement are the same individuals, the agreements were executed, sealed and delivered at different times, each relates to an entirely separate and distinct subject-matter and is made with different depositors. A depositor under one of these agreements has, by virtue of his deposit, no rights in, or interest under any other agreement. There are ten plaintiffs. Although they

sue to set aside and to remove the committeemen under seventy-eight distinct deposit ·agreements, the plaintiffs severally and collectively are parties to only fifteen of them.

In attempting to maintain this action and to meet this weakness in their position as to the remaining sixty-three agreements, the plaintiffs allege in their complaint, which is upon information and belief, that other persons, though not named as parties herein and holding and owning similar bonds and certificates of deposit, have expressed their desire to join and assist in this action, and inasmuch as such persons are very numerous and it would be impracticable to bring them all before the court in the first instance, and inasmuch as the said persons have common interests with the said plaintiffs and are similarly situated, this action is brought by the plaintiffs herein on behalf of themselves and in a representative capacity on behalf of all such owners and holders similarly situated, of bonds and certificates of deposit of the several issues hereinafter may hereafter join in and assist in this action. The appellants point out that this is the only statement in all the papers before the court by which the plaintiffs attempt to justify their suit to rescind and to remove the committeemen under sixty-three separate and distinct agreements to which none of them is a party and under which none of them has any rights, claims or interest.

Representative actions are actions in which the plaintiff is one of a class and sues for the benefit of all others similarly situated. In so far as the rescission of an agreement is concerned, a person who is a party to the agreement is not in the same class as a person who is not, and there is no similarity of interest between them. Bondholders in other issues are not similarly situated for the reason that many of the issues are meeting all required payments, including taxes, interest and amortization.

It seems to us that with regard to the sixty-three deposit agreements to which none of the plaintiffs is a party, they have no capacity to sue to rescind or to remove the committeemen therein appointed, or to saddle any such great expense upon the bondholders, who, as far as the record shows, are ·perfectly satisfied with conditions. Strangers to an agreement may not sue to rescind for a fraud perpetrated on parties to an agreement, who claim no such fraud and, as far as the record is concerned, are perfectly content with their investments.

By the terms of each of the fifteen deposit agreements to which some of the plaintiffs are parties, any party has the right to withdraw in the manner therein specified. None of these plaintiffs has expressed any desire to do so. If any plaintiff feels oppressed by the provisions governing withdrawal, he may sue to be relieved

either of that provision or of the entire agreement. That, however, is not what the plaintiffs have done. They sue not only to be relieved personally of their obligations under the contracts but to have them declared void as to the ten thousand or more other parties thereto, and to have the court depose the committeemen selected pursuant to the terms of the agreements; to impose new ones upon the parties thereto, and to appoint a receiver of their property. The appellants very naturally say: What is to be said of the rights of the thousand or more other parties to each of these agreements — have they no right to be heard? Are the committeemen with whom they have contracted and for whom they have expressed no dissatisfaction, to be deposed, and others imposed upon them, without their having a day in court, simply because the plaintiffs are dissatisfied with those committeemen? And are receivers to be appointed of their property, without notice to them and an opportunity to be heard? Whatever rights the committee has under the agreement, it certainly has not the right to represent all the bondholders in an action to remove the committee itself, because in such an action its rights would be antagonistic to the rights of the bondholders. Consequently, the mere service of the papers upon the committee does not confer jurisdiction over these thousands of bondholders or bring them into court. (*Atkins* v. *Trowbridge*, 162 App. Div. 629, at p. 636; *Knell* v. *City of Buffalo*, 54 Hun, 80; *Brown* v. *Bache*, 66 App. Div. 367; *Guffanti* v. *National Surety Co.*, 196 N. Y. 452; *Warnock Uniform Co.* v. *Garifalos*, 224 id. 522; *Bouton* v. *Van Buren*, 229 id. 17; *Kvello* v. *City of Lisbon*, 38 N. D. 71; 164 N. W. 305.)

The complaint and the moving affidavits consist almost exclusively of allegations respecting the methods employed by Straus & Co. in underwriting bond issues, in selling the bonds to the public, and, after default, in putting its own officers and employees on bondholders' committees. Obviously, the only effect of all these references in the moving papers is to create a strongly adverse atmosphere against Straus & Co. That does not give, however, a right to remove a competent committee, especially when only a small minority of the bondholders make application for such removal.

We do not see upon what ground the court at Special Term was prompted to brand these independent committees as mere " usurpers and interlopers." They were properly elected and are properly serving the thousands of bondholders who apparently have no objection to their continuance as such and by virtue of written contracts.

The order appealed from is far reaching and sweeping in its

terms. It appoints receivers of all the property of seventy-eight separate bondholders' committees. This property consists, among other things, of about $65,000,000 face amount of bonds secured by mortgages on real estate in different parts of the United States. The order also deposes all the members of the seventy-eight committees and appoints the receivers their successors, none of whom is exclusively engaged in the real estate or any kindred business. It would seem that some of the members of the committee should have sufficient experience to enable them to deal with hundreds of pieces of real property, which experience would be at least valuable if not essential.

It is pointed out that the order is bound to create havoc among the bondholders and require the duplication of a vast amount of work already done by the committees which have been functioning, and cannot fail to disrupt pending activities looking toward reorganization of the properties involved for the benefit of the bondholders. It is not contended that the committeemen are not well qualified by training and experience to do the kind of work required of a reorganization committee. Such work involves investigation into the real estate constituting the security for the bonds. It involves problems of management and operation of many large parcels of real estate, renting problems, and, generally speaking, an intimate knowledge of the real estate business. In connection with reorganizations, banking problems are presented; money must be raised to finance the reorganization. In addition, the committee, to function effectively, must be cognizant of business conditions and prospects generally. As already pointed out, it would be difficult to find a group of men better qualified by training and experience to cope with such problems.

The court at Special Term said: " It is said that the members of the Independent Bondholders' Committee are in fact sincere, honest and experienced men. Those personally known to the court are honest and experienced, and undoubtedly sincere in a desire to help the bondholders."

It seems to us that before men of character, who possess such a varied and extensive experience, are deposed, and several lawyers with at least no more experience and at least no better qualified, are put in their place, there should be very persuasive proof of wrongdoing or some more substantial reason for such action.

The voluminous complaint herein is based entirely upon information and belief. The grounds upon which it seeks rescission and a dissolution of the various deposit agreements and the return of all bonds, not only to plaintiffs but to all those who deposited them, *are that the defendants conspired to defraud the bondholders*

*of their property and rights;* that S. W. Straus & Co., Inc., organized bondholders' committees for the issues mentioned in the complaint and caused various Straus officials to constitute such committees with a view to defrauding the bondholders.

The appellants point out that not a single act of malfeasance or misfeasance or conspiracy on the part of any of these appellants is alleged or proven; that no harm or wrong is suggested as flowing from any act of the present committees, nor is any wrongful or illegal act shown to have been threatened by all or any of these appellants. They say that the respondents can point to nothing in the record to support the bare assertions and conclusions, prolifically made in the complaint upon information and belief, that the appellants have done or are about to do anything detrimental to the best interests of the bondholders whom they so ably represent.

We agree that there is not the slightest justification for the appointment of receivers herein. The integrity and ability of these appellants was not only conceded, but their right to office was proven beyond dispute. It is clear that not one single wrongful act was shown to have been committed or threatened by the appellants. To enjoin such men who are working out the destinies of these bondholders will cause great hardship to the bondholders.

We are of opinion that no court has authority to alter deposit agreements by substituting receivers or successor trustees for members of the committees, unless some good reason is shown therefor. Persons have a right to choose with whom they will contract. In this instance they have so chosen and depositing bondholders have entered into contracts with the committees under the respective deposit agreements. (*Habirshaw Electric Cable Co.* v. *Habirshaw Electric Cable Co., Inc.,* 296 Fed. 875.) The court at Special Term has in effect set aside those contracts and informed the bondholders who have made the same that they may not have the experienced men whom they have selected to carry out the contracts but must take others selected by the court. It is well-settled law that courts may interpret contracts for litigants, but they have never, under such circumstances, been permitted to make new contracts for them or substitute parties to existing contracts. (*Hughes* v. *Cuming,* 165 N. Y. 91.)

Under rule II of the Supreme Court, Special Term Rules, New York County, this case could have been set for immediate trial. The defendants agreed to serve an answer within five days and proceed to immediate trial, and further agreed that, if the plaintiffs were required to amend the complaint, the appellants would accept such amended complaint and proceed to trial at once. All such

offers appear to have been spurned. The avowed purpose of the plaintiffs apparently was to secure an injunction and the appointment of receivers. With such a determination in view, the facts, statutes and decisions appear to have been wholly overlooked. The offer to proceed to immediate trial in a litigation of this magnitude should have been accepted. A matter of such importance could have been speedily and thoroughly investigated on a trial and settled without any great cost, and should have been given immediate consideration.

We wish to emphasize the fact that the receivers were neither necessary nor required and can be of no service unless to add greatly to the cost of this litigation. We have recently had occasion to reverse several orders appointing receivers where a plaintiff acquired a few bonds or shares of stock, evidently for the purpose of securing a receivership, thus taking advantage of the misfortune of others at a time when a receivership would be wasteful and of no help to any one interested in the property.

The parties hereto should not overlook the fact that if any reorganization agreement is submitted which is not just and proper, or which does not meet with the approval of the bondholders, they have a right to apply to the court to set aside such an agreement. That has frequently been done, and in each case the courts have safeguarded the rights of the bondholders.

This litigation emphasizes the necessity for legislation to protect the unsuspecting public purchasing bonds, especially where such bonds are represented as first mortgage bonds, and for the regulation of advertisements resorted to by high pressure salesmen in the marketing of such bonds. The great need of supervision by a governmental agency is accentuated by the facts that have been disclosed in the mass of litigation involving S. W. Straus & Co., Inc.

We have reached the conclusion that the order should be reversed. The bondholders' committees represented by Lewis H. Pounds, George Gordon Battle, Frank J. Murphy, Simon Newman, George W. Retz, John D. Reilly, George U. Tompers and A. L. Werner should be permitted to continue their work of solving the problems they have encountered by reason of the default in the payments due on the respective bond issues. Their work should not be hampered by injunctions or the appointment of receivers. If any bondholder has an action for rescission, it may be speedily tried and disposed of by the court.

We deem it our duty to call attention to the great responsibility assumed by the members of the Independent Bondholders' Committee in accepting appointment thereon. Any member of the

committee who is unable or unwilling to give his personal attention to the duties of the respective committees should resign and permit the selection of some other person willing to properly perform the work called for by such membership.

The numerous bondholders are entitled to that consideration. They may be able to save a large part of their investments by faithful and intelligent work on the part of the committee.

The order should be reversed, with twenty dollars costs and disbursements, and the motion denied.

TOWNLEY and GLENNON, JJ., concur; FINCH, P. J., dissents and votes for affirmance.

O'MALLEY, J. (concurring). I concur in the result reached by Mr. Justice MARTIN and vote for reversal of the order. I agree with him in his view respecting the grave responsibility assumed by the members of the Independent Bondholders' Committee in the circumstances disclosed herein. In my view they should as soon as possible dispense with the services of Committee Service, Incorporated, and set up their own independent organization.

FINCH, P. J. (dissenting). The order appealed from is right and should be affirmed.

So abhorrent to a court of equity is unfaithfulness in trustees that the court should remove successor trustees nominated and appointed by, and whose sole authority is derived from, the unfaithful trustees.

The fact that plaintiffs are not holders of bonds in all issues, or parties to all the deposit agreements, is not a bar to equitable relief where there has been a commingling by the trustees of the moneys received from all the properties and there are insufficient assets to pay bondholders in full.

Defendants appeal from an order wherein the court at Special Term, on behalf of the plaintiffs and others similarly situated, has appointed three persons as trustees in substitution for another group of trustees, parties defendant, constituting a so-called " Independent Bondholders' Committee," purporting to have been elected by their predecessors, trustees who resigned because of demonstrated unfaithfulness to their trust. Further, the order appealed from enjoins the original fiduciaries and their alleged successors in trust, constituting said " Independent Bondholders' Committee," from acting as committees or members of committees with respect to bonds of some seventy-eight issues deposited with the former committees on and prior to February 25, 1933, from taking action under the original deposit agreements as to such bonds, and from disposing of money collected from the property securing the payment

of said bonds without the order of the court. Further, the order appealed from appoints said three persons successor trustees as receivers to hold in custody said bonds deposited prior to February 25, 1933, and empowers them to take such steps and proceedings as they may deem necessary for the protection of the owners of certificates of deposit representing such deposited bonds. In effect this constitutes such trustees and receivers a committee for the protection of the owners of the bonds in place of the unfaithful trustees who have resigned and those whom said unfaithful trustees have elected as their successors."

The plaintiffs are purchasers and holders of seventeen different issues of bonds and certificates of deposit sold to them by S. W. Straus & Co. by fraudulent misrepresentations. These bonds are in default and many of them have been deposited with dummy committees, consisting of employees, officers and executives of Straus & Co., organized, controlled and directed by the fraudulent seller of the bonds, for the alleged protection of the parties defrauded by them. The action is a representative one. The complaint sets forth a conspiracy to defraud on the part of Straus & Co. on a very large scale, whereby Straus & Co. occupying a fiduciary relation with respect to plaintiffs and other purchasers of Straus bonds, by reason of being trustees of the mortgages securing the bonds in the case of eighty-five per cent of the issues, and organizing, through its officers and employees, committees for the so-called protection of the defaulted bonds, was enabled to market by fraudulent representations about $200,000,000 worth of bonds to about 190,000 bondholders, manage the properties for its own profit after the default, carry on the business of insuring them, and control the reorganization of the defaulted bond issue, in their own interest and to the detriment of the defaulted bondholders, as evidenced by plans called " reorganization plans," which have been denounced by the courts as unjust.

The complaint further challenges the abdication of the trust obligations by means of a consent decree and the attempted selection of successor trustees for the so-called protection of bondholders by the very parties and their principal who had originally defrauded the bondholders.

That the members of the various protective committees were all executives and employees of Straus & Co., selected and controlled by Straus & Co., and were acting as mere dummies for that concern, is not disputed. The so-called reorganization agreements attempted to be perpetrated by these dummy committees have been characterized as unfair and unjust in court decisions, one of which has been affirmed by this court. The gross frauds practiced by Straus &

Co. in unloading worthless and misrepresented bonds upon the public are set forth in detail, in testimony of officers and employees of Straus & Co., including the defendants Roberts and S. J. T. Straus, in testimony taken by the Attorney-General of this State and set forth in the printed record made a part of the motion papers of the plaintiffs and submitted to this court. In that case the Appellate Division, Second Department, while modifying the order appealed from, was unanimous in condemning these frauds. (*People* v. *Straus & Co., Inc.*, 236 App. Div. 796.)

To characterize this record as showing fraud does not do justice to the brazen fraud and hypocrisy well nigh unequalled in the records of this court. One example out of many will suffice. Compare advertising. " Every bond we sell is simply a part of an old-fashioned first mortgage on land and building. * * * The relations between a bond house and its clients are confidential and their business is of high repute, built upon a basis of fair dealing and of constant watchfulness for their customers' security;" that Straus & Co. " should be consulted like a doctor or lawyer in financial matters and investors should give Straus their confidence * * *;" that S. W. Straus gives " close supervision over the property securing the bonds, seeing that taxes are paid promptly, repairs made, and they check the soundness of the security through periodic reports of earnings," with the admission of Samuel J. Tilden Straus, as follows: " Q. But you know that there were hundreds of thousands of dollars of bonds sold by Straus & Co. where the borrowers were in default? A. Yes. Q. And you characterize that as a rotten piece of business, don't you? A. Yes."

In connection with the above, consider the organization of the appellant Straus Securities Company, Incorporated, three days after the injunction against Straus & Co. under the Martin Act, " to deal in real estate bonds and other investment securities;" and the statement of this appellant that " the principal executives and sales representatives formerly associated with S. W. Straus & Co., Incorporated, will be associated with the new company." Not only is the fraud here exposed subversive of the existence of fair business dealings, but it threatens to become permanent tending to the destruction of all credit, trust and decencies upon which the business life is built.

To a very large extent this proceeding merely involves the application of well-established legal principles to a state of facts which in large measure has already been adjudicated and apparently cannot be changed upon a trial of the action. The plenary power of the Supreme Court over trusts and fiduciaries includes the power to remove an unfaithful fiduciary and a successor named by such

unfaithful fiduciary, and to appoint in place thereof an independent substituted trustee, and this without regard for and without reflection upon the personal qualifications of the trustee named by the unfaithful fiduciary. The members of protective committees for bondholders are fiduciaries. Unfaithful fiduciaries about to be removed have never been considered a competent body to appoint a successor fiduciary, even though the respectability and standing of the successor fiduciary are not in question.

To the application of the above well-established legal principles there is interposed a number of technical objections, the chief of which, and the only one which would appear entitled to serious consideration, is that there are involved seventy-eight deposit agreements as to sixty-three of which none of the plaintiffs is a party. It is urged, therefore, that, as to the latter, plaintiffs have no capacity to sue or to apply for the removal of the trustees thereby appointed.

This argument is more superficial than real. Straus & Co. handled all these issues as one enterprise and under these agreements they had the specific right to use the moneys from any property upon any other property or in connection with any other property and all the moneys from all the properties were commingled. Since, through the entire course of dealings, Straus & Co. has treated these properties as interrelated, it is not possible for them now to seek to hold them as separate properties in order to escape from the conclusion to which their entire course of dealings up to this time has led. The complaint clearly states a cause of action with respect to the specific issues of which the plaintiffs are bondholders, and the court, having thus jurisdiction of the action, in order to do complete equity, must bring in all the transactions that constitute the substance of the underlying conspiracy pursuant to which all the funds from the various issues were commingled and administered for the benefit of the trustees. Where, as in the case at bar, there is a limited fund available for distribution, composed of funds drawn from all issues of bonds, obviously the rights of all the bondholders can be determined only in a representative action in equity. In such an action substance is given consideration over form, and the fact that plaintiffs individually may not be entitled technically to all the relief demanded, is not a bar to any relief. The final relief to be accorded may be molded to conform to the facts developed upon the trial. Here the decisive considerations are the facts that the defendant trustees have been nominated by their unworthy predecessors and are in control of property common to all the bond issues, and have been appointed to act under and carry out the pro-

visions of the original deposit agreements. These agreements have been judicially determined to be unfair and unjust to the bondholders, and a part of the aforesaid alleged conspiracy. In such case a court of equity has inherent power to grant relief. As already noted, the original committees were organized and controlled by the Straus trustees who have been judicially found to be unfaithful to their trust and to have personally profited at the expense of the *cestuis*, and their interest was adverse through their various money making corporations at the expense of the bondholders. When the exposure became such as to make it certain that no court would tolerate their continuance in office, they sought to keep their hand in by taking illegal advantage of a provision which they had inserted in the deposit agreements providing for the filling of vacancies where any member of the committees should resign, which obviously applied to resignations in the ordinary course and not wholesale, one by one, to permit a whole committee to resign because of the charge of unfaithfulness, and appoint its successor. The compelling reason why a court will not permit the defendants to act as trustees is that a court will not allow crooked trustees whose interests are adverse, to have a hand in naming the successor trustees, let alone, as in this case, being their sole source of authority.

It follows that the order appealed from should be affirmed.

Order reversed, with twenty dollars costs and disbursements, and motion denied.